UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| THELMA KERSHAW, *Plaintiff* | * * |
| V. | * CIVIL NO. * * * |
| MEGAN BRENNAN, POSTMASTER GENERAL OF U.S. POSTAL SERVICE *Defendants* | * * * OCTOBER 15, 2018 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

**FIRST COUNT**:   [42 U.S.C. §2000e, et seq]

1. This is an action for money damages to redress the deprivation by the defendant, through its agents, servants and/or employees, of the rights secured to the plaintiff by the Constitution and laws of the United States. The defendant, through its agents, servants and/or employees, was responsible for violating plaintiff's federal and state statutory rights and thereby improperly deprived her the freedom and liberty afforded to all citizens of this state and country, without any cause, justification or excuse.

2. Jurisdiction in this Court is invoked under the provisions of the Judicial Code at 28 U.S.C. §§1331 and 1343, 29 U.S.C. §701, et seq., the Rehabilitation Act of 1973, 42 U.S.C. §2000e, and Title VII.

3. During all times mentioned herein, the plaintiff, Thelma Kershaw ("plaintiff" or "Kershaw"), was a citizen of the United States, residing within the State of Connecticut, county of Hartford, city of New Britain. The plaintiff is African American of race and her color is black.

4. At all times mentioned herein, the defendant, Megan Brennan, (the

2

"defendant") was and is the Postmaster General of the United States Postal Service ("Postal Service"), a quasi-governmental agency which provides mailing services to the general public and employs well over 500,000 individuals throughout the nation and maintains offices throughout the State of Connecticut.

5. In or about 1989, the plaintiff became employed by the defendant as a general mail clerk and has competently performed all her responsibilities for the defendant since that time.

6. On September 19, 2016, plaintiff, while continuing her work as a general mail clerk, entered her office and found Pat Nessing, IT Specialist ("Nessing"), under her desk and Katheryn Buckbee ("Buckbee"), Lead MDO Manager, standing against the wall. When the plaintiff inquired as to what they were doing, they indicated there was a problem with the computers. After the plaintiff told them that she had not complained about any problem with her computer, they smiled and left her office. Buckbee is Caucasian of race and her color is white.

7. Immediately after Nessing and Buckbee left plaintiff's office on September 19, 2016, several black boxes appeared on her screen while the plaintiff was using the Distribution Bar Code System on eBuy, the Postal Service purchasing system. The plaintiff immediately called IT and spoke to Linda Pelletier who informed her that a download was not taking place. Soon after, the plaintiff's keyboard, mouse and screen then became unresponsive to commands.

8. Despite the fact that plaintiff has complained about computer problems on numerous occasions, the defendant allowed viruses and/or computer problems to exist on her computer. The viruses constantly interfered with the plaintiff's ability to perform her

3

duties and responsibilities as a general mail clerk, and her keyboard, mouse, and screen continued to become unresponsive.

9. By way of example of the problems that plaintiff experienced due to the aforementioned issues with her computer, the plaintiff was forced to call surrounding plants and borrow needed supplies due to the fact that she could not order labels or supplies from her computer.

10. As another example of the problems that plaintiff experienced due to the aforementioned issues with her computer, the plaintiff was forced to spend substantial time after hours completing her work. The plaintiff was also forced to divert time from her work by placing calls to IT.

11. On or about September 19, 2016, the plaintiff also noticed that some paperwork was missing on her desk and that someone had rifled through her credit card statements. In addition, the paperwork that she had been working on was completely missing, and she also discovered that a door that she had locked in her room had been opened. This incident combined with the aforedescribed problems with her computers made the plaintiff feel threatened and unwelcome at work.

12. The stress, anxiety and depression the plaintiff experienced as a result of the harassment she endured within the workplace eventually caused her to suffer severe psychological trauma from which she is presently attempting to recover.

13. As a result of the hostile work environment and harassment she experienced, the plaintiff bid out of her job and is now working at a different facility although she would have preferred her former location if not for the fact that she was being harassed.

14. After the plaintiff left, the defendant replaced her with Donna Perrillo

4

("Perrillo"), who is Caucasian of race, white of color and much less qualified than the plaintiff. The defendant had been attempting to replace plaintiff with Perillo for an extended period of time.

15. The defendant's deliberate and intentional conduct in attempting to convince the plaintiff to leave her former position caused serious and permanent injury to her emotionally, psychologically and physically.

16. The harassment the plaintiff endured began to adversely affect her health, and in April of 2016, she had a nervous breakdown that resulted in her seeking emergency treatment.

17. But for the plaintiff's race, which is African American, and her color which is black, she would not have been treated in the harassive, discriminatory and retaliatory manner as aforedescribed.

18. There has been a pattern and practice of the defendant treating minorities, including the plaintiff, in the aforedescribed demeaning, harassive, disparate and discriminatory manner. In point of fact, many if not all of the minority employees at the Postal Service have faced disparate treatment and open hostility at one time or another.

19. The plaintiff has repeatedly noticed a pattern and practice of discrimination within the workplace and has experienced a hostile work environment and disparate treatment created and/or perpetrated by the agents, servants and/or employees of the defendant.

20. Plaintiff was treated differently from employee Millie Cook ("Cook") in that Cook has never been commanded to unload stock from a pallet unlike the plaintiff. In addition, the defendant never inflicted the same sort of harm on Cook's computer as it did to

5

the plaintiff. Cook is Hispanic of race and white of color.

21. The defendant treated employee Jodie O'Keefe ("O'Keefe") differently from the plaintiff in that the defendant required the plaintiff to take a typing exam where she had to type at thirty words per minute whereas O'Keefe was not similarly required to take the same training. O'Keefe was also never required to unload stock from a pallet. O'Keefe is Caucasian and white of color.

22. The defendant also treated Sue Garafalo ("Garafalo") differently than the plaintiff in that Garafalo was allowed four tries to pass the thirty word per minute exam although the plaintiff was only allowed one try. Garafalo is Caucasian of race and white of color.

23. On or about December 30, 2016, a Complaint Affidavit was filed with the Equal Employment Opportunities ("EEO") Office alleging discrimination by the defendant and retaliation due to the plaintiff's race which is African American and her color which is black.

24. A release of jurisdiction letter was issued by the EEO on August 31, 2018 giving plaintiff the right to commence the instant action.

25. The actions of the defendant, through its agents, sevants and/or employees, as manifested by the ongoing harassment of the plaintiff, as well as the disparate treatment to which she was subjected in relation to other employees who were Caucasian of race and white of color, amounted to discriminatory employment practices which constituted a hostile work environment, discrimination, and disparate treatment and harassment, in direct violation of Title VII, as defendant's actions were due to plaintiff's race and color.

6

**SECOND COUNT:** [29 U.S.C. §701, et seq., the Rehabilitation Act of 1973]

1-25. Paragraphs 1 through 25 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 25 of the Second Count, as if fully set forth herein.

26. The aforedescribed conduct of the defendant, through her agents, servants and/or employees, was motivated, in substantial part, by defendant's perception of plaintiff's mental disabilities, which were brought on by the treatment she endured by the defendant.

27. In addition to the foregoing, the actions herein complained of by the plaintiff as against the defendant, because of the acts of her agents, servants and/or employees, were as a result of defendant's negative perception of Kershaw's mental disabilities.

28. The plaintiff was capable of performing her duties even with her mental disability which was diagnosed in or about April of 2016. The accommodation Kershaw requested was that all ongoing discrimination, harassment, intimidation and retaliation immediately cease, which it did not.

29. The harassment of Kershaw by the defendant's agents, servants and/or employees, was a result of discriminatory treatment in violation of the Rehabilitation Act, 29 U.S. C. Sec. 701, et seq., insofar as she had been continually harassed on the basis of her perceived and/or actual disabilities and because of the defendant, through her agents, servants and/or employees', perception of the plaintiff as having such a disability.

**THIRD COUNT:** [Retaliation pursuant to Title VII and the Rehabilitation Act]

1-25. Paragraphs 1 through 25 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 25 of the Third Count, as if fully set forth

7

herein.

26. Subsequent to plaintiff filing her EEO Complaint Affidavit on December 30, 2016, the Postal Service, through its agents, servants and/or employees, engaged in a campaign of retaliation on a continuous basis.

27. As a direct result, and in retaliation of plaintiff filing a number of complaints with the EEO, she was constantly subjected to disparate treatment, harassment, intimidation and a hostile work environment.

28. But for the plaintiff having participated in the aforementioned protected activity of filing a complaint with the EEO, she would not have been treated in the harassive, disparate, discriminatory and hostile manner to which she was subjected.

29. The actions of the defendant, through its agents, servants and/or employees, as manifested by the ongoing harassment of the plaintiff, as well as the disparate treatment to which she was subjected, in relation to other similarly situated Caucasian of race and white of color, amounted to selective discriminatory employment practices perpetrated against the plaintiff, which constituted clear and unequivocal retaliation, in violation of 42 U.S.C. Sec. 2000e, and 29 U.S.C. Sec. 701, *et seq.* as defendant's actions were due to plaintiff's engagement in protected activity.

**WHEREFORE**, the plaintiff claims judgment against the defendant as follows:

a. Compensatory damages in the amount of no less than Five Hundred Thousand Dollars ($500,000.00);

b. Punitive damages in an amount this court shall consider just and fair;

c. Attorney's fees and the reimbursement of costs of the instant action; and

e. Such other relief as this Court shall consider to be just, fair and equitable.

8

PLAINTIFF, THELMA KERSHAW

BY:\_\_\_/s/_____
   Robert J. Vontell
   Law Office of
   W. Martyn Philpot, Jr., LLC
   409 Orange Street
   New Haven, CT  06511-6406
   Tel. No. (203) 624-4666
   Federal No. ct30024
   Her Attorneys

The plaintiff hereby requests a trial by jury.

\employ\thelma kershaw\federal complaint.10-18